Hon. FÉLIX P. POCHÉ,
Hon. ROBERT B. TODD,
Hon. CHARLES E. FENNER, } *Associate Justices.*
Hon. THOMAS C. MANNING,

---

### No. 1197.

#### ELLEN BROUSSARD ET AL. VS. P. H. SEGURA, CLERK, ET AL.

Under the provisions of Sec. 8 of Act 95 of 1869, (R. S. 3093) on the subject of mortgages, the *affidavit* of a tutor, stating his indebtedness with necessary facts to his ward, and recorded prior to the 1st of January, 1870, is a valid registry of the minor's tacit mortgage, and preserved it as effectually as if an extract of the inventory of his estate had been registered. This ruling is made in a case in which, at the time of inscription which was the last day of December, 1869, no inventory had been taken of the minor's property.

A PPEAL from the Twenty-first District Court, Parish of Iberia. *Fontelieu,* J.

---

*Breaux & Renoudet* for Plaintiffs and Appellees.

*R. S. Perry* for Defendants and Appellants.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiffs claim that they are entitled to the cancellation of certain inscriptions from the mortgage books of the parish in which they own real estate, existing apparently in favor of

James DeBlanc, who, with the clerk and *ex-officio* recorder, is made defendant in this suit.

The defense is, that the inscriptions are valid and secure a legal mortgage. The prayer is, that the validity of the inscriptions and of the mortgage be recognized.

From an adverse judgment, the defendants have appealed.

The following are the conspicuous facts :

On the 29th of December, 1862, Dorsino DeBlanc was appointed and qualified as tutor by nature of his son, James DeBlanc, the issue of his marriage with Palmyre Chacheré, who had died on the 4th of July previous. On the 6th of September, 1869, he sold to Elvina Broussard, from whom plaintiffs inherited it, his share in the property described in the petition. No inventory having been taken of his wife's estate, D. DeBlanc, on the 31st of December, 1869, made and caused to be recorded in the mortgage office, an *affidavit,* in which he declared : that he had received $4,008 in slaves for his wife, who had since died, leaving as the issue of her marriage with him James L. DeBlanc, then a minor, now the real defendant in this controversy and that he, Dorsino DeBlanc, had been confirmed as the tutor of his son and was indebted to the latter in the said amount.

It appears that, subsequently, on March 18th, 1872, R. Chacheré, administrator of the successions of the maternal grandfather and grandmother of James DeBlanc, made and caused to be likewise recorded an *affidavit,* in which he attested that, in his said capacity, he had paid to D. DeBlanc, pursuant to tableaux of 1866 and 1867, for his son, the sum of $3,765.

The complaint is, that the registry of the first affidavit was wholly unauthorized by law and did not preserve the legal mortgage of the minor, if he had any at the time against his father and tutor ; that the registry of the second is of no consequence and, finally, that the consideration of the debt consisted in negroes, and being *contra bonos mores,* is null and void and produces no effect.

The plaintiffs claim that the previously existing tacit mortgage of the minor could have continued in force only if a copy or abstract of the inventory of his property had been recorded.

In support of their proposition, they refer the Court to the Constitution of 1868, Art. 123, to Act 95 of 1869, p. 114, and to the ruling in Hickman vs. Thompson, 28 An. 268 and in other cases ; 22 An. 278 ; 23 An. 57, and 33 An. 220.

There can be no doubt that, if the tacit mortgage which existed in favor of the minor previous to the adoption of the Constitution of 1868

has not been seasonably recorded in the mode prescribed by the law passed in furtherance of a constitutional requirement, it was not preserved and bridged over the 1st of January, 1870, and that the illegal inscription made is cumbersone and must be erased as a nullity.

The last authority referred to has no bearing upon the question now under consideration, and the other precedents cited merely constitute *res judicata* between the parties to the litigation in each case.

An examination of those decisions does not show that Section 3093 of the R. S. was submitted to the consideration of the Court. It is, therefore, to be inferred that, had such been the case, the probability is that the rulings made would not have seen the light of day.

It cannot be disputed, nor is it, that had the certificate of the amount of the minor's property, mentioned in Section 3087, been recorded, the inscription would have operated a legal mortgage in favor of the minor and against his tutor's actual and future property. But it by no means follows that, in the absence of the registry of such certificate, some other registry could not and did not preserve the minor's previous occult mortgage.

It is manifest that the law giver was peculiarly anxious to provide for the preservation of all legal mortgages tacitly existing prior to the adoption of the Constitution of 1868, and that in the apprehension of causing some injury by the absence of provision of adequate remedy, he passed that part of the law of 1869, which now constitutes Section 3093 of the R. S.

By so doing, the door was effectually closed against the complaint of *casus omissus*.

That Section declares: that any and all persons entitled to a mortgage or privilege on the property of another person shall cause the evidence of the same to be recorded; that "if the same be not in writing, the person claiming the mortgage or privilege, his *agent* or *some person* having knowledge of the fact, must make *affidavit* of all the necessary facts, which affidavit shall be recorded in the mortgage book, etc.

Section 3095 is to the effect, that the recording of any instrument, according to the provisions of the act, shall operate as a mortgage or privilege on the property of the person owning or subject to the mortgage, etc.

In the present instance, as no inventory had been taken of the property of the minor, it would have been a physical impossibility to have caused to be recorded an extract of the same.

It may be that the father and tutor should have caused an inventory of his son's estate to be taken; that for not so doing he is censurable;

but it does not follow, that on account of such dereliction of duty on his part, his minor son should suffer when the law afforded other adequate remedy, which was resorted to.

Dorsino DeBlanc, as the tutor of his son, was his agent and was specially authorized by law, in the absence of any written evidence of his son's mortgage against him, to make and register the *affidavit* which he has subscribed and recorded and which complied with the law, and hence, preserved the mortgage.

We attach no significance to the objection urged against the apparent consideration of the debt acknowledged in the *affidavit*.

The rulings made under a different regime, holding such consideration as immoral and illegal, have since been effectually blotted out of jurisprudence, not only by our own highest court, but also by the most elevated tribunal in the Union.

As the plaintiffs formally admit that they do not even attempt to inquire into the validity and consideration of the mortgage, further than appears on the face of the papers recorded, we are relieved from the necessity of passing upon the existence and correctness of the claim secured by the inscription and mortgage.

It is, therefore, ordered and decreed that the judgment appealed from be reversed, and it is now ordered, adjudged and decreed that the demand of plaintiffs be rejected with costs in both Courts.